CUSTOM TAXICABS, INC., a corporation, and Thomas C. Howard, Appellants,

v.

Donald H. HATCH and Betty Hatch, Appellees.

No. 1583.

Municipal Court of Appeals for the District of Columbia.

Argued Dec. 13, 1954.

Decided Jan. 11, 1955.

J. Lawrence Hall, Washington, D. C., for appellants.

James T. Barbour, Jr., Washington, D. C., with whom Thomas H. Patterson, Washington, D. C., was on the brief, for appellees.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

Appellees, plaintiffs below, sued the defendant taxicab driver and the corporate owner for injuries and damages resulting from an automobile collision. When the plaintiffs had completed their case in chief, counsel for defendants moved for a directed verdict on the grounds that plaintiffs had failed to sustain their burden of proving negligence on the part of defendants, and that the evidence showed that Donald Hatch, the driver of plaintiffs' automobile, was contributorily negligent as a matter of law. The trial court denied the motion and defendants offered no testimony. The jury returned a verdict in favor of the plaintiffs, and this appeal follows.

The testimony most favorable to plaintiffs was substantially as follows: About 7 p.m.

on the night of the collision, Donald Hatch was driving his automobile north on 9th Street, N. E. His wife occupied the front seat beside him. A mixture of snow and rain was falling and the streets were wet. At Massachusetts Avenue plaintiff brought his automobile to a full stop at a stop sign and waited while one automobile passed in front of him moving in a westerly direction on Massachusetts Avenue. He looked both ways and saw no other traffic traveling east or west. When he looked to his right, in an easterly direction, he could see a distance of approximately two city blocks. Plaintiff then proceeded across the intersection, and when his car was in the middle of the intersection he again looked to his right but saw no on-coming traffic. Massachusetts Avenue is approximately 80 feet wide at this intersection, and 9th Street is approximately 60 feet wide. When the front of plaintiffs' automobile had passed the north curb of Massachusetts Avenue and was about to leave the intersection his car was struck on the rear right side by defendants' taxicab. At no time prior to the collision did the driver see the striking vehicle.

▉▉▉ The question before us is whether the evidence was legally sufficient to warrant the court in sending the case to the jury. We think it was. Plaintiff driver testified that he looked twice and saw nothing traveling west on Massachusetts Avenue, and his car was more than seven-eighths through the intersection when it was hit. Undoubtedly the driver of an automobile who, when arriving at an intersection, is confronted with a stop sign [1] must exercise a degree of care dictated by the requirements of the traffic regulations and the dictates of common sense. He must stop his car before entering the favored street, observe the moving traffic, and give the right-of-way to any approaching vehicle that would constitute an immediate hazard. At the trial the driver of the taxicab did not testify, and there was no showing by the defendants that the taxicab had proceeded on Massachusetts Avenue for any appreciable distance. There was also no testimony that the lights on the taxicab were burning before the collision. Surely the plaintiffs had a right to be driving north on 9th Street, and there was no evidence tending to show that the plaintiff driver had not obeyed the stop sign or that he was proceeding at any excessive rate of speed or was otherwise negligent. Therefore, in view of the testimony presented the collision could only have occurred through the negligence of the driver of the taxicab, and if the jury believed the plaintiffs' testimony, it could find negligence on the part of the taxicab driver. There was no testimony that the driver of the taxicab, when traveling in a westerly direction on Massachusetts Avenue, did not have a clear view of the intersection. If he failed to keep a lookout for automobiles traveling north on 9th Street, he was negligent; or if he looked and failed to see that the plaintiffs' car was about to leave the intersection, his observation was so careless as to constitute negligence.[2] In situations of this character the trial court on a motion for a directed verdict must view the evidence most favorable to the plaintiff.[3] As stated by the Supreme Court, "It is well settled that, where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law but of fact, and to be settled by a jury; and this whether the uncertainty arises from a conflict in the testimony, or because, the facts being

1. Traffic and Motor Vehicle Regulations for the District of Columbia, section 48: "At any point at which an official 'Stop' sign has been erected, all vehicles shall come to a complete stop and shall yield to other vehicles within the intersection or approaching so closely thereto as to constitute an immediate hazard, but said vehicles having so yielded may proceed and other vehicles approaching the intersection shall yield to the vehicles so proceeding into or across said intersection * * *."

2. Washington Terminal Co. v. Callahan, 51 App.D.C. 84, 276 F. 334.

3. Baltimore & O. R. Co. v. Postom, 85 U.S. App.D.C. 207, 177 F.2d 53; Shewmaker v. Capital Transit Co., 79 U.S.App.D.C. 102, 143 F.2d 142.

undisputed, fair-minded men will honestly draw different conclusions from them." Richmond & Danville R. Co. v. Powers, 149 U.S. 43, 13 S.Ct. 748, 749, 37 L.Ed. 642.

■■ On the issue of contributory negligence defendants seem to rely heavily on the argument that the plaintiffs' driver was negligent in that he did not look, or if he looked he did not look observantly. This is pure conjecture or sheer speculation. Instead of meeting the burden cast upon them of proving contributory negligence, defendants rested at the end of the plaintiffs' case without calling a single witness and therefore it was for the jury to determine what deductions to draw from the evidence.

An examination of the record convinces us that the evidence presented questions appropriate for the jury's determination and that the verdict should stand.

Affirmed.